UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AG EQUIPMENT COMPANY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 18-CV-0375-CVE-JFJ |
| | ) |
| IE SERVICES (PVT.) LTD., and | ) |
| PETRO ALLIED SOLUTIONS (PVT.) LTD., | ) |
| | ) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Now before the Court are Petro Allied Solutions (Pvt.) Ltd.'s Motion to Dismiss Improper Party and Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. ## 31, 32) and IE Services (Pvt.) Ltd.'s Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), 8(a)(2), and 9(b) (Dkt. ## 33, 34). Petro Allied Solutions (Pvt.) Ltd. (PAS) states that it is a corporation organized under the laws of Pakistan and it argues that it is not subject to personal jurisdiction in Oklahoma. Dkt. # 32. IE Services (Pvt.) Ltd. (IES) argues that plaintiff AG Equipment Company (AG) has failed to state a claim upon which relief can be granted.

**I.**

AG is an Oklahoma corporation with its principal place of business in Broken Arrow, Oklahoma, and AG states that it "sells compressors and related parts to various companies around the world, including Pakistan." Dkt. # 30, at 2. On December 28, 2016, AG retained IES and PAS as representatives or agents for the purpose of bidding on a contract with Engro Fertilizer Ltd. (Engro), and AG agreed to pay IES and PAS a commission. Id. A dispute arose between the parties

concerning the amount of the commission, and the dispute was resolved by means of settlement agreement. Id.

The settlement agreement was executed on August 31, 2017. The parties agreed that any disputes arising under the settlement agreement would be resolved under Oklahoma law and IES and PAS consented to the jurisdiction of the "Courts of Oklahoma." Dkt. # 38-1, at 2. AG agreed to pay "IES/Petro Allied Solutions (Pvt) Ltd" $75,000, "[s]ubject to the condition that IES/Petro Allied Solutions (Pvt) Ltd will not compete directly or indirectly with AG Equipment Company in Engro Fertilizer Ltd and OPL till 31st March, 2019." Id. AG states that it paid the money to "IES and PAS," but AG claims that IES and PAS breached the settlement agreement by "bidding competitively against AG." Dkt. # 30, at 3. AG claims that IES and PAS never had any intention of complying with the settlement agreement. Id. at 4.

On April 19, 2018, AG filed this case in Tulsa County District Court alleging claims of breach of contract, money had and received, and fraud against IES and PAS. Defendants removed the case to this Court and filed motions to dismiss. AG filed an amended complaint (Dkt. # 30) and the Court found that the motions to dismiss the original complaint were moot. Dkt. # 29. IES and PAS have renewed their motions to dismiss as to the claims asserted in AG's amended complaint.

## II.

PAS argues that it is a foreign company not a party to the settlement agreement, and that it is not subject to personal jurisdiction in Oklahoma. Dkt. # 34. AG responds that PAS and IES were both parties to the settlement agreement, and PAS consented to be sued in Oklahoma for claims arising out of the settlement agreement. Dkt. # 37.

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp., 471 U.S. at 472).

The settlement agreement identifies the parties to the agreement as "IES/Petro Allied Solutions (Pvt) Ltd." and AG, and the settlement agreement states that "the Courts of Oklahoma shall have jurisdiction to settle any dispute arising out of or in connection with the execution or interpretation of this Settlement Agreement . . . ." Dkt. # 37-1, at 1. There is no dispute that PAS is a corporation organized under the laws of Pakistan and that PAS has its principal place of business in Pakistan. PAS does not maintain an office in Oklahoma and does not regularly conduct business in the state, and PAS states that it does not directly advertise or solicit business in Oklahoma. Dkt.

4

# 32-1, at 4. PAS states that it has provided brokerage services to one other customer from Oklahoma and it claims that sales were made in Pakistan. Id. AG disputes some of PAS' statements and AG claims that PAS' website shows that PAS invites potential customers to contact PAS regardless of where the customer is located. Both parties claim that contract negotiations took place where they were respectively located.

The key fact for the exercise of personal jurisdiction is whether PAS is a party to the settlement agreement, because there is no evidence that PAS regularly conducts business in Oklahoma or even sought out AG as a potential customer. AG argues that PAS uses its website to solicit business from customers outside of Pakistan, but AG has offered no evidence in support of this assertion. On the other hand, PAS' arguments are based on its unsupported assertions that it is not a party to the settlement agreement, and it asks the Court to ignore the plain language of the parties' contract. At this stage of the case, the Court finds that the settlement agreement names "IES/Petro Allied Solutions (Pvt) Ltd."[1] as the party or parties to be bound by the contract, and the parties to the settlement agreement stipulated that the "Courts of Oklahoma" would have jurisdiction over claims arising out of the execution or interpretation of the settlement agreement. This is

---

[1] Based on the amended complaint (Dkt. # 30), the corporate disclosure statements (Dkt. ## 5, 6), and the notice of party name correction (Dkt. # 21), it does not appear that the parties are disputing that PAS and IES are separate entities. The Court has not set this matter for an evidentiary hearing and has limited its review to the amended complaint, the settlement agreement, and any affidavits submitted by the parties. Based on this limited record, the Court cannot conclusively rule out that PAS and IES were both parties to the settlement agreement or that they were acting as alter egos such that a reasonable person could not distinguish between them. However, the Court is not making a binding determination that both PAS and IES are proper parties, and this issue can be raised in a motion for summary judgment with additional evidence that cannot be considered in ruling on a motion to dismiss.

sufficient evidence that PAS knowingly entered a contractual relationship with an Oklahoma business and that PAS agreed to litigate disputes arising out of this relationship in Oklahoma courts.

As the Court has found that PAS has minimum contacts with Oklahoma, the Court must now "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" OMI Holdings, 149 F.3d at 1091. The touchstone of this analysis is whether the exercise of personal jurisdiction would be "reasonable." Id. The determination of reasonableness "evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." Id. at 1092 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)).

The Tenth Circuit has provided district courts five factors to consider in determining whether exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice. The first factor is the burden on defendant of litigating in plaintiffs' chosen forum. Id. The Tenth Circuit has said that "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." Id. at 1096 (citing World-Wide Volkswagen, 442 U.S. at 292). The second factor analyzes Oklahoma's interest in resolving the parties' dispute. OMI Holdings, 149 F.3d at 1095. Oklahoma "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 474 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state. OMI Holdings, 149 F.3d at 1095. "This factor may weigh heavily

6

in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in a another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)). The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute." Id. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Benton, 375 F.3d at 1079 (quoting OMI Holdings, 149 F.3d at 1097). The fifth and final factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." OMI Holdings, 149 F.3d at 1097.

Neither AG nor PAS offers any argument concerning the traditional notions of fair play and substantial justice, but the Court does not find that these factors weigh against the exercise of personal jurisdiction over PAS. Defendant may face some burden from litigating in a foreign country, but defendant expressly agreed to litigate claims arising out of the settlement agreement in Oklahoma. Oklahoma has a strong interest in providing a forum for its citizens to resolve disputes, and the parties have not shown that AG could obtain complete relief in a court in Pakistan. In this case, Oklahoma is likely the most efficient forum to resolve the parties's dispute, because many of the witnesses and evidence are located in Oklahoma and the parties essentially agreed that Oklahoma would govern disputes arising out of the settlement agreement. Traditional notions of fair play and

7

substantial justice do not require the Court to decline to exercise personal jurisdiction over PAS, and the Court finds that PAS's motion to dismiss for lack of personal jurisdiction should be denied.

## III.

IES argues that all of AG's claims should be dismissed, because the non-competition provision of the settlement agreement is void against Oklahoma public policy. Dkt. # 34, at 3. IES also argues that AG has failed to allege sufficient facts to support plausible claims of breach of contract, money had and received, and fraud. Id. at 4-7.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263

F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

IES argues that non-competition agreements are generally unenforceable as a matter of Oklahoma law, and the non-competition provision in this case does not fall under any exception that would allow the non-competition provision to be enforced. Under Oklahoma law, "[e]very contract by which one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title . . . is to that extent void." OKLA. STAT. tit. 15, § 217. The Oklahoma Supreme Court has determined that § 217 does not invalidate every contract that restrains trade, but the statute prohibits any agreement that would constitute an unreasonable restraint on a lawful trade or business. Bayly, Martin & Fay, Inc. v. Pickard, 780 P.2d 1168, 1171 (Okla. 1989). Oklahoma courts have employed a rule of reason analysis in antitrust and covenant not to compete cases, and this requires a court to consider "(1) the relevant market, (2) the effect of the restraint on competition in that market and (3) if the effect is anti-competitive, whether any pro-competitive benefits outweigh the anti-competitive effect." Vanguard Environmental, Inc. v. Curler, 190 P.3d 1158, 1164 (Okla. Civ. App. 2007). This does not always need to be an extensive analysis into the relevant market, and the court's focus should be on the protection of competition and the public, rather than the effect on the competitors. Id. at 1164-65.

The Court finds that IES' argument concerning the validity of the non-competition provision of the settlement agreement is more appropriately considered on a motion for summary judgment, and IES' request to dismiss all of plaintiff's claims should be denied. Defendant's primary argument is that the non-competition provision is inherently unreasonable, because the settlement agreement

9

provides no geographical restriction limiting the scope of the non-competition provision and this functions as a global limitation on IES' right to conduct business. However, this argument is based on the silence of the settlement agreement as to any geographic limitation, and AG responds that Engro operates in a limited geographical area and the non-competition provision does not necessarily function as a global limitation on IES' operations. The issue raised by IES requires the consideration of evidence outside of the amended complaint and the settlement agreement, and this issue is not suitable for resolution under Fed. R. Civ. P. 12(b)(6).

The Court finds that AG has stated a claim for breach of the settlement agreement. IES argues that the amended complaint does not adequately describe how defendants allegedly breached the settlement agreement or how AG was injured by defendants' conduct. Dkt. # 34, at 5. However, the amended complaint plainly alleges that "IES and PAS breached the Settlement Agreement and the Non-Competition Provision by bidding competitively against AG." Dkt. # 30, at 3. This adequately puts defendants on notice that AG is proceeding with a breach of contract claim based on allegations that defendants competed with AG for Engro's business. As to AG's injury, the amended complaint adequately sets forth that defendants retained the $75,000 paid by AG pursuant to the settlement agreement, and defendants allegedly engaged in competitive bidding prohibited by the non-competition provision without returning the $75,000. These allegations are sufficient at this stage of the case to state a claim for breach of contract.

IES argues that AG has not stated a claim for money had and received, because AG has failed to allege facts concerning how defendants breached the settlement agreement or that defendants have retained any money that should be returned to AG. Dkt. # 34, at 6. Oklahoma law provides a claim whenever one has the money of another which he, in equity and good conscience, has no right to

retain." Sarber v. Harris, 368 P.2d 93, 95 (Okla. 1962). This is considered a legal claim that can be tried to a jury, but the claim is governed by principles of "equity and fair dealing." Id. AG alleges that it agreed to pay defendants $75,000 and defendants agreed not to compete with AG for Engro's business. Dkt. # 30, at 2. AG claims that it paid $75,000 to defendants but defendants bid competitively against AG for a contract with Engro. Id. These allegations are sufficient at this stage of the case to state a claim for money had and received. AG claims that defendants accepted $75,000 from AG based on a contractual agreement that defendants would not compete against AG for Engro's business, but defendants breached the non-competition agreement and retained the $75,000. Based on these allegations, it would be inequitable to allow defendants to retain the money paid by AG when defendants allegedly breached its agreement with AG. In this particular case, it is important to allow AG to proceed with a claim for money had and received, because defendants have argued that the underlying contract is unenforceable under Oklahoma law. This type of claim could permit a recovery for AG under equitable principles, even if the contract is unenforceable, and AG has appropriately pled alternative theories of recovery.

IES argues that AG has failed to state a claim of fraud with particularity, because the amended complaint does not give defendants sufficient notice of the factual basis for this claim. Dkt. # 34, at 7. The Court has reviewed the amended complaint and finds that AG has adequately alleged a fraud claim. However, the Court finds that there is another issue raised by AG's pleading of alternative fraud and breach of contract claims based on the same facts. A party may not allege breach of contract and fraud claims based on identical facts, and the claims must be sufficiently distinct in order for a party to simultaneously maintain claims for breach of contract and fraud. Horton v. Bank of America, 189 F. Supp. 3d 1286, 1290-91 (N.D. Okla. 2016); Atkinson, Haskins,

11

Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Group, 2014 WL 3891267, *5 (N.D. Okla. Aug. 7, 2014); McGregor v. National Steak Processors, Inc., 2012 WL 314059, *3 (N.D. Okla. Feb. 1, 2012). A party who elects to sue for breach of contract cannot bring a fraud claim unless the "tortious act is sufficiently independent of the breach of contract." McKnight v. Marathon Oil Co., 2017 WL 1628981, *2 (W.D. Okla. May 1, 2017). In addition, "the fraud must have resulted in damages greater than those caused by the breach of contract alone." West v. Ditech Financial LLC, 2016 WL 3200296, *4 (W.D. Okla. June 8, 2016). In this case, AG alleges that defendants committed fraud by entering the settlement agreement with no intention of complying, and this is the sole basis for AG's fraud claim. The Court can find no meaningful distinction between the breach of contract and fraud claims, and it appears that AG can obtain a complete recovery on its breach of contract claim. See McGregor, 2012 WL 314059 (allegations that a party entered a contract with the intent to breach the contract does not create any distinction between claims of fraud and breach of contract). IES's motion to dismiss is granted as to AG's fraud claim.

**IT IS THEREFORE ORDERED** that Petro Allied Solutions (Pvt.) Ltd.'s Motion to Dismiss Improper Party and Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. ## 31, 32) is **denied**.

**IT IS FURTHER ORDERED** that IE Services (Pvt.) Ltd.'s Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), 8(a)(2), and 9(b) (Dkt. ## 33, 34) is **granted in part** and **denied in part**: it is granted as to the dismissal of AG's fraud claim; it is denied in all other respects.

**DATED** this 30th day of August, 2019.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE